UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
BRIAN DANIELS,

Plaintiff,

- against -

NEW YORK CITY, et al.,

Defendants.
----------------------------------------------------x

**MEMORANDUM & ORDER**

14-CV-5267 (ILG) (CLP)

GLASSER, Senior United States District Judge:

Plaintiff Brian Daniels brings this suit pursuant to 42 U.S.C. § 1983 against two unknown New York City police officers and the City itself, alleging that the officers falsely arrested him after observing that the rear of his van displayed a sheet of paper with his license plate number written on it in lieu of an official license plate. The City now moves to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that it is clear from the face of the Complaint that the officers had probable cause to arrest plaintiff.[1] For the following reasons, that motion is DENIED.

## BACKGROUND

The following facts, submitted by plaintiff, are accepted as true for purposes of deciding this motion. Plaintiff, a Brooklyn resident, owns and drives a 15-person van registered and licensed in Florida. Compl. (Dkt. No. 1) ¶¶ 6, 11. On or about May 5, 2014, the license plates on his van were stolen. Id. ¶ 12. He reported that theft to the 69th Precinct of the New York City Police Department on that same date, and was given an "Incident Information Slip" confirming that he reported the crime of petit larceny.

---

[1] The unknown officers have not been identified or served, but the crux of the City's argument is that if its officers did not commit a constitutional violation, the City could not have committed one either. See Dkt. No. 8 at 3 (citing, inter alia, City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam)).

Peterson Opp. Decl. (Dkt. No. 15), Ex. D.[2] After the theft, plaintiff placed a sheet of paper "in the rear" of the van upon which he had written his license plate number across the middle, the letters "FL" in the upper-right hand corner, and the words "LOST PLATE" in the lower-right hand corner. See id., Ex. A; Compl. ¶ 15. Plaintiff also notified the Florida Highway Safety and Motor Vehicles Department (commonly known as the Department of Motor Vehicles or "DMV") of the theft and requested that replacement plates be sent to him in New York. Compl. ¶ 14.

On or about May 21, 2014, at approximately 11:30 p.m., plaintiff was seated in his parked van with the engine turned off outside of a friend's residence in Brooklyn. Id. ¶¶ 16-17. A police car pulled up beside the van. Id. ¶ 18. Two officers exited the car and approached plaintiff's window. Id. ¶ 19. Plaintiff told the officers that his license plates had been stolen and that he was awaiting replacements from the Florida DMV. Id. ¶ 20. In support of these statements, he showed one of the officers his Florida driver's license, Florida vehicle registration, insurance documents, and the Incident Information Slip he received from the 69th Precinct. Id. ¶ 21; see also Peterson Opp. Decl., Exs. B-D. The other officer stated that he had "forged plates" and told him to exit his van. Compl. ¶¶ 22-23. When plaintiff exited the van, that officer handcuffed and arrested him. Id. ¶ 24. Plaintiff asked the officers to verify his report to the 69th Precinct that his license plates had been stolen, but the officers' response was "don't tell us how to do our job." Id. ¶¶ 25-26.

Plaintiff was taken to the 63rd Precinct, where he was processed and held on a felony charge of forgery. Id. ¶¶ 27-28. At approximately 8:00 a.m. on May 22, 2014,

---

[2] The materials plaintiff submitted in opposition to the City's motion may be considered by the Court because they are documents plaintiff relied upon in drafting the Complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

the next day, plaintiff was transferred to Central Booking, where he remained until he was released without being charged at approximately 7:30 p.m. Id. ¶¶ 29-30. His replacement license plates from Florida arrived shortly thereafter. Id. ¶ 31.

Plaintiff commenced this action on September 4, 2014, alleging that his arrest violated his right under the Fourth Amendment of the United States Constitution to be free from unreasonable seizure. The City moved to dismiss the case on December 2, 2014 (Dkt. No. 8), plaintiff opposed the motion on January 30, 2015 (Dkt. Nos. 14-15), and the City replied on February 20, 2015 (Dkt. No. 16).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although detailed factual allegations are not necessary, mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions" by the plaintiff will not suffice. Id. (internal quotation marks and citations omitted). The Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011). This Complaint fully complies with Iqbal and Twombly.

## DISCUSSION

In New York, a federal claim that an arrest violated the Fourth Amendment is substantially the same as a claim for false arrest under state law. E.g., Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (collecting cases). In either case, a plaintiff must show, "inter alia, that the defendant intentionally confined him without his consent and

without justification." Id. (citing Broughton v. State, 37 N.Y.2d 451, 456 (1975)). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest. . . .'" Id. (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). Probable cause is an objective standard "established 'when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (quoting O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993) (additional quotation marks and citation omitted)).

The City argues that the officers had probable cause to arrest plaintiff both for criminal possession of a forged instrument (the only stated reason for the arrest) and for violating the New York Vehicle and Traffic Law's requirements regarding license plates. Neither argument is availing.

## I. Criminal Possession of a Forged Instrument

Under New York law, a person is guilty of criminal possession of a forged instrument in the third degree "when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses a forged instrument." N.Y. Penal Law § 170.20. An "instrument" is an item intended to convey information or privilege that is "capable of being used to the advantage or disadvantage of some person," and it is "forged" when, inter alia, it is "falsely made," meaning it "purports to be an authentic creation of its ostensible maker or drawer, but . . . is not . . . ." See id. §§ 170.00(1), (4), & (7).

It would be making a needless fortress out of the dictionary, Cabell v. Markham, 148 F.2d 737, 739 (2d Cir. 1945) (L. Hand, J.), to support the conclusion that the arrest

of this plaintiff for the crime of forgery was baseless. The officer didn't have an iota of trustworthy information that the paper displayed was falsely made or made with intent to deceive. The City's assertion that he did is bottomed entirely on the inartful representation of plaintiff's license plate. ". . . he [the plaintiff]," it contends, "must still reckon with the fact that he was driving his van with no official license plate affixed to it. The only identifying information on the van was a single sheet of paper with the text 'FL BHK-D43 LOST PLATE' scrawled on it in what appears to be black marker. These facts alone would warrant a reasonable officer to believe that plaintiff committed a crime." Def.'s Reply at 3. That argument is sheer sophistry in light of the arresting officer's refusal to even glance at the 69th Precinct's Incident Information Slip, which plaintiff urged him to look at, and his peremptory dismissal of plaintiff's effort to explain that his lawfully-owned Florida license plate was stolen. Assuming that he even bothered to listen, the officer's behavior evinced a classic example of conscious avoidance—a deliberate ignorance of the dispositive fact which would dispel even a suggestion of probable cause that the crime of forgery was attempted or committed.

## II. Traffic Violation

Perhaps doubtful that a reasonable officer would have an objectively reasonable belief that the crime of forgery was the appropriate basis for plaintiff's arrest, the City seeks refuge in Devenpeck v. Alford, 543 U.S. 146, 153 (2004), and the New York Vehicle and Traffic Law, which was not the stated cause of plaintiff's arrest. Section 402(1)(a) of the New York Vehicle and Traffic Law provides that "[n]o person shall operate, drive or park a motor vehicle on the public highways of this state unless such vehicle shall have . . . a set of number plates issued by the commissioner . . . , one on the front and one on the rear of such vehicle. . . ." That provision, the City contends, dispels liability, because

the officer's "subjective reason for making the arrest," forgery, "need not be the criminal offense as to which the known facts provide probable cause." Devenpeck, 543 U.S. at 153 (emphasis added). That is to say, if the arrest for forgery was objectively unreasonable, then the violation of the Vehicle and Traffic Law can fill the probable cause vacuum, given the facts known to the officer. Not mentioned by the City is 15 N.Y.C.R.R. § 21.2(a), which provides that "[w]hen one or both registration number plates are missing . . . a motorist may operate or park the motor vehicle upon the public highways . . . while waiting for the issuance of a duplicate of such missing . . . plate[s] if the motorist places a temporary substitute plate . . . of the approximate size of the missing plate[s]" on his vehicle. That regulation was obviously not obeyed by the arresting officer, who preferred to remain ignorant and consciously avoided knowing the facts to which Section 21.2(a) is specifically addressed. More importantly, if the facts were known, they would have provided no cause for arresting the plaintiff, because he was in full compliance with the law. Devenpeck is inapplicable and distinguishable factually in any event.

In fine, according to the Complaint, Mr. Daniels was the victim of a theft. His Florida license plates were stolen. He promptly placed a "temporary substitute plate" on his van, divining the N.Y.C.R.R. in doing so. He reported the theft to the local police precinct. He received a confirmation of that report from the police. He promptly notified the Florida DMV and requested replacement plates. He did everything that the law and prudence required. He tried to inform the officer who would arrest him of those facts but was rebuked for his effort, handcuffed, and thrown in jail, where he spent a night and most of the following day. In seeking relief for his harrowing experience, he has clearly stated a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss the Complaint is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
July 30, 2015

/s/
I. Leo Glasser
Senior United States District Judge